## Case No. 15,276.

### UNITED STATES v. HALBERSTADT.

[Gilp. 262.] [1]

District Court. E. D. Pennsylvania. March 31, 1832.

NEW TRIAL—MASTER AND SERVANT—FAILURE TO DEFACE MARKS OF SPIRIT CASK—PENAL ACTION.

1. In a civil action, brought to recover a pecuniary penalty, the court has full power to grant a new trial, although the verdict was in favour of the defendant.

[Cited in U. S. v. Fox, Case No. 15,155.]

2. The responsibility of a merchant for the negligence or unlawful acts of his clerk, is limited to cases properly within the scope of his employment.

3. Where an empty cask, which had contained foreign distilled spirits, has been purchased for, and removed to the store of, a commission merchant by his clerk, before the marks set thereon under the provisions of the act of March 2, 1799 [1 Stat. 627], have been defaced, the former is not liable to the penalties of the act, if he had no agency in or knowledge of the purchase and removal, nor acquiesced in the illegal proceeding of his agent.

4. The provisions of the act of March 2, 1799. which require certain marks to be set upon casks containing foreign distilled spirits, are not repealed, directly or constructively, by the act of April 20, 1818 [3 Stat. 469], requiring the deposit of distilled spirits in the public warehouses.

By the forty-fourth section of the act of congress of March 2, 1799, regulating the collection of duties on imports and tonnage, it is provided, that on the sale of any empty cask which has been branded or marked by the officers of inspection as containing foreign distilled spirits, prior to the delivery of it to the purchaser or any removal of it, the marks so set thereon are to be defaced in the presence of an officer of inspection or of the customs; and "every person who shall sell, or in any way alienate or remove, any cask, which has been emptied of its contents, before the marks and numbers set thereon shall have been defaced and obliterated in the presence of an officer of inspection, shall for every such offence, forfeit and pay one hundred dollars, with costs of suit." On the 19th April, 1831, twenty-nine empty casks, which had formerly contained foreign distilled spirits, were found at the store and in the possession of the defendant [John Halberstadt], who was a general commission merchant, having been purchased since they were emptied of their contents, and the marks and numbers set upon them at the time of importation not being defaced or obliterated. On the representation of the collector of the customs, the district attorney brought suits against the defendant, to recover the penalty of one hundred dollars, accruing on the purchase or removal of each cask. On the 27th February, 1832, the first of these suits came on to be tried before Judge Hopkinson and a special jury. The

1 [Reported by Henry D. Gilpin, Esq.]

facts of the purchase of the empty casks, and of their being removed to the warehouse of the defendant, without the marks being defaced, were not denied. Evidence, however, was given to show that he was in the habit of making large and extensive purchases of empty casks, to be sent to Messrs. H. & H. Canfield, merchants in New York, and correspondents of the defendant; that the casks in question were purchased by Mr. Campion, a clerk of the defendant, not for himself, but for and by the direction of the latter, by whom they were paid for, and from whose store they were to be forwarded to New York; but that the defendant had not given any directions in regard to the particular kind of casks, and knew not that the marks were yet upon them, until notice of the fact was given to him by the officers of the customs, by whom they were found at his store. On this evidence, Judge Hopkinson charged the jury, that although it was apparent the law had been violated, yet as neither the purchase nor removal had been made by the defendant, the fact of his having either directed or acquiesced in the act of hi. agent must be established, to make him liable to the penalty; and that they must ascertain this fact from the whole evidence, and especially from the whole conduct of the defendant, from all that he had said and done. Under this charge the jury found a verdict for the defendant. On the 30th March, 1832, a motion was made on behalf of the United States for a new trial, on three grounds: (1) That the verdict of the jury was against the weight of evidence. (2) That the verdict of the jury was against law. (3) That the court erred in charging the jury, that the defendant was not liable for the acts of his agent, if he had no direct personal agency, nor acquiesced in the acts on which the suit was founded.

Mr. Gilpin, Dist. Atty., for the United States. The evidence on the trial was sufficient to show that the defendant was the principal person in the whole transaction. He directed his clerk to purchase these casks; he had long been in the habit of purchasing them; he must have seen them as they were placed in his store; he could not have failed to know that the marks were still on them. It is not necessary to establish positive and explicit directions; it was his duty to see, that in employing a person to do a particular act, the law was not violated. A violation of the law produced by his neglect, and when the act was for his benefit, is to be punished as much as if done by his previous authority. The very neglect to disavow the act of an agent, when it must be well known, is an acknowledgment of its being done with the assent of the principal, and is a participation in it. If the act be criminal, this participation makes the principal equally liable with the actual offender; he may be punished criminally; a fortiori, he is subject to a mere action of debt. 1 Story's Laws, 611 [1 Stat. 660]; Parsons v. Armor, 3 Pet. [28 U. S.] 428; Del Col v. Arnold, 3 Dall. [3 U. S.] 333; Com. v. Gillespie, 7 Serg. & R. 469; Bredin v. Dubarry, 14 Serg. & R. 27; Upton v. Gray, 2 Greenl. 373; State v. Heyward, 2 Nott & McC. 312.

Mr. Chew, for defendant. There are three grounds on which this motion should be refused by the court: (1) It is not a case for a new trial. (2) The section on which the suit has been brought is virtually repealed. (3) The violation of it, if culpable, cannot be charged on the defendant.

(1) This is in effect a criminal prosecution; the object is to punish the defendant for a violation of a public law; a verdict in his favour is an acquittal. Under such circumstances the court ought not to grant a new trial. Especially they should not, on the ground of evidence, on any matter of fact. Now even if the view of the law taken by the district attorney is right, it depends for its effect entirely on the view of the controverted facts taken by the jury. It is a question of evidence; and no case can be shown where on such a question, involving a serious penalty, the verdict has been set aside.

(2) This provision is obsolete. The object of marking the casks was solely for the security of the revenue. It was intended to ascertain what articles were entitled to drawback. Until 1818 such a security was necessary; but it was then found ineffectual, and another mode to attain the same object was adopted. Since the act of the 20th April, 1818, casks containing foreign distilled spirits are only entitled to drawback, by being kept in the public stores from the time of importation to that of exportation. It is now entirely immaterial, for any purpose connected with the revenue, whether the marks are erased or not. This is the sole purpose for which the law was made. It never was intended to operate against private frauds. 3 Story's Laws, 1715 [3 Stat. 470]; Sixty Pipes of Brandy, 10 Wheat. [23 U. S.] 421; U. S. v. The Polly and Jane [Case No. 16,063].

(3) It is not pretended that this defendant committed the act alleged to be illegal; he certainly never did it. It is not pretended he even directed it to be done; there is no evidence of such a fact. It was not necessary for any object he is proved to have had. Now admitting that a principal is liable for a criminal act of his agent, in which he participates; yet all the facts being conceded, they do not amount to such participation.

Mr. Gilpin, for the United States, in reply. There is nothing in this case to exclude it from the usual rule for granting a new trial; that is, a misunderstanding of the jury as to the law and facts. If there was an error in the construction given to the law, in regard to the liability of the defendant for his agent's act, which it is contended there was,

to keep company with the Hope; because the defendants knew when they took the risk, that these vessels had agreed to keep company, (an agreement which it was not then possible to countermand,) and as one sailed much faster than the other, (as the defendants also knew,) it was to be expected that they would separate, and might be obliged to wait for each other. But this could not be understood as exceeding a reasonable time; and therefore, the question of deviation, under this head, must depend upon your opinion, whether the stoppage of the Brothers at Tomgataboo, for twelve or fourteen days, waiting for the Hope, was reasonable or not.

2. As to the departure of this vessel from the ordinary course of the voyage, the rule, as laid down in the case of Winthrop v. Union Ins. Co. [Case No. 17,901], is, that if the termini of the voyage be fixed in the policy, the vessel cannot go out of the usual course of the voyage, notwithstanding she is permitted to stop and trade at any ports or places. That is the present case; and no evidence has been offered to show, that in a voyage like the present, it is the usual and established course to go out of the direct course, from one of the termini to the other. Nevertheless, the deviation to Norfolk island will not avoid the policy, if, from the evidence, you think it was necessary for the purpose of obtaining refreshments. Neither will the stay of three months at Fanning's island have this effect, if you are of opinion that the time was employed in necessary repairs to the vessel. But if the vessel could have got from Guma to Canton, in the situation in which she was, we think she was not justified in going to Manilla, merely because, by going to Canton, she must then have ended her voyage, before she had completed her cargo, because she had no right to go out of the usual course of her voyage, for the purpose of trade, or for any other reason than such as would justify a deviation in ordinary cases.

PETERS, District Judge, thought that on such a voyage as this, the vessel was not confined to the direct course of the voyage.

Verdict for plaintiff.